Tina Wolfson, CA Bar No. 174806
*twolfson@ahdootwolfson.com*
Theodore Maya, CA Bar No. 223242
*tmaya@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111;
Fax: 310-474-8585

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED FREEDLAND, DAVID KOSTENKO, and ROMEO TORO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROBINHOOD MARKETS, INC., ROBINHOOD FINANCIAL LLC, ROBINHOOD SECURITIES, LLC, and Does 1-10,<br><br>Defendants. | Case No. 20-cv-3218<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Jared Freedland, David Kostenko, and Romeo Toro (collectively, "Plaintiffs"), by and through their counsel, bring this Class Action Complaint against Defendants Robinhood Markets, Inc., Robinhood Financial, LLC, and Robinhood Securities, LLC (collectively, "Defendants," or "Robinhood"), on behalf of themselves and all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows:

## PARTIES

1. Plaintiff Jared Freedland is an individual and a resident of Tampa, Florida, who has used Robinhood for approximately 3-4 years.

2. Plaintiff David Kostenko is an individual and a resident of Tacoma, Washington, who is a user of Robinhood who experience significant losses as a result of the outages that affected Defendants' trading platform, as alleged below.

3. Plaintiff Romeo Toro is an individual and a resident of Hampton, Virginia, who used the Robinhood app for approximately one year before the March 2 outage described below.

4. Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets is the corporate parent of Defendants Robinhood Financial LLC and Robinhood Securities, LLC.

5. Defendant Robinhood Financial LLC is a Delaware LLC with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is registered with the U.S. Securities & Exchange Commission ("SEC") as a brokerage firm (SEC#: 8-69188). Defendant Robinhood Financial has a clearing arrangement with its affiliate, Defendant Robinhood Securities.

6. Defendant Robinhood Securities, LLC is a Delaware LLC with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a registered with the SEC as a brokerage firm (SEC#: 8-69916). Defendant Robinhood Securities

clears trades introduced by its affiliate, Defendant Robinhood Financial.

7. Plaintiffs are unaware of the true names and capacities of the defendants sued as DOES 1-10, and therefore sue these defendants by fictitious names. Plaintiffs will seek leave to amend this Complaint when and if the true identities of these DOE defendants are discovered. Plaintiffs are informed and believe and thereon allege that each of the defendants designated as a DOE is responsible in some manner for the acts and occurrences alleged herein, whether such acts or occurrences were committed intentionally, negligently, recklessly or otherwise, and that each said DOE defendant thereby proximately caused injuries and damages to Plaintiffs as herein alleged, and is thus liable for the damages suffered by Plaintiffs.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of states different from Defendant.

9. This Court has personal jurisdiction over Defendants because they are headquartered in this District.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside here, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

11. Robinhood was founded in 2013 and presented to consumers as a free, easy-to use investing and stock trading platform, accessible via a smartphone app, which offers commission-free stock trades.

12. However, Robinhood is only able to offer commission-free trades by taking advantage of its consumers.

13. Robinhood primarily generates revenue by selling its clients' market order flow data to market makers. When Robinhood receives orders from clients, instead of

executing those orders on the exchanges itself, it sells the right to fill those orders to other parties — market makers — who can then execute the trades privately instead of on the open market in the exchange.

14. Robinhood also generates revenue by earning interest on idle cash in its investors' accounts.

15. Market makers give Robinhood a payment for order flow ("PFOF") in exchange for the right to execute Robinhood's customers' orders. Because Robinhood does not execute the orders itself, and because there is no exchange fee that has to be paid, it keeps costs low and is able to offer free trading. The market makers use the order data to make a spread executing the market orders. They pay Robinhood the PFOF as a "rebate" based on the dollar amount of each trade executed.

16. Robinhood has grown rapidly since inception. The company has raised over $1 billion in venture capital through private offerings.

17. Most recently, on May 4, 2020, Robinhood announced a $280 million Series F funding at an $8.3 billion valuation. <https://blog.robinhood.com> (last visited May 11, 2020).

18. Plaintiffs are informed and believe that Robinhood has more than 10 million accountholders.

19. Robinhood's marketing is geared primarily toward younger investors.

20. Robinhood falsely advertises its app as "reliable" (*e.g.*, <https://robinhood.com/us/en/support/articles/whats-clearing-by-robinhood/> (last visited May 8, 2020)), and as allowing investors to "trade in real time" (<https://robinhood.com/us/en/> (last visited May 8, 2020)).

21. Robinhood experienced a number of outages during which investors using its platform were unable to execute trades, including on March 2-3, and 9, 2020.

22. These outages took place at a time when the U.S. stock market has been experiencing extreme volatility due to economic fallout related to the COVID-19 virus, and attendant economic shutdowns intended to slow the spread of that virus. As a result,

investors' losses were, predictably, higher as a result of Robinhood's outages than they likely would have been but for such volatility.

23. During such turmoil, investors need access to and control over their investments in order to protect them.

24. Defendants voided a sell option due to these outages and, as a result, Mr. Freedland lost approximately $1300, instead of making approximately $100 in profit that he otherwise would have realized from that option.

25. Defendants' outages caused Mr. Toro to miss a trade and thereby lose approximately $47,000 in profit.

26. Defendant's outages caused approximately $2000 in losses to Mr. Kostenko, not including any profits he potentially could have made.

27. On March 3, 2020, Defendants admitted that "[t]he outages you have experienced over the last two days are not acceptable."  <https://blog.robinhood.com> (last visited May 11, 2020).  In that same blog post, Defendants attributed "the cause of the outage" to "stress on our infrastructure — which struggled with unprecedented load." *Id.*

28. Robinhood also reassured its investors that it was "upgrad[ing] our infrastructure" (*id.*) but, nonetheless, additional outages occurred.

## CLASS ACTION ALLEGATIONS

29. Plaintiffs seek relief in their individual capacity and as representatives of all others who are similarly situated.  In accordance with Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiffs seek certification of a nationwide class (hereinafter, the "Class") preliminarily defined as follows:

> All Robinhood accountholders within the United States as of March 2, 2020.

30. Excluded from the Class are Defendants, including any entity in which any Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by any Defendant, as well as the officers, directors, affiliates, legal representatives, heirs,

predecessors, successors, and assigns of any Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families.

31. <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, Defendants are believed to have in excess of 10 million accountholders.

32. <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

    a. Whether Defendants' trading platform was inadequate to handle reasonably foreseeable demand;

    b. Whether Defendants failed to provide contingencies to customers to execute timely trades in the event of an outage;

    c. Whether Defendants violated rules promulgated by the Financial Industry Regulatory Agency ("FINRA"), including Rules 4370 and 5310;

    d. Whether Defendants violated state consumer protection laws by failing to disclose that their trading platform infrastructure was inadequate and unable to handle foreseeable, high-volume, market activity;

    e. Whether Defendants breached legal, regulatory, and licensing requirements by failing to provide adequate access to financial services in a timely manner;

    f. Whether Defendants breached their contracts with Class members, and/or the implied covenant of good faith and fair dealing, in connection with the outages and Defendants' failure to provide financial services in a timely manner;

    g. Whether Defendants were negligent or grossly negligent in failing to provide financial services in a timely manner due to their inadequate technology;

  h. Whether Defendants were unjustly enriched by their conduct;

  i. Whether Defendants breached fiduciary duties owed to customers by failing to provide adequate access to financial services in a timely manner;

  j. Whether Plaintiffs and the other Class members were injured by Defendants' conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief; and

  k. Whether Plaintiffs and the other Class members are entitled to injunctive and declaratory relief.

33. <u>Ascertainability</u>. All members of the purposed Class are readily ascertainable. Defendants have access to addresses and other contact information for all, or substantially all, members of the Class, which can be used for providing notice to many Class members.

34. <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class members because Plaintiffs, like every other Class member, were unable to execute trades during the above-described outages.

35. <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions.

36. <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

37. Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Defendants have acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## COUNT I

## Breach of Contract

38. Plaintiffs incorporate the substantive allegations above as if fully set forth here.

39. The Customer Agreement that Plaintiff and Class Members entered into with Robinhood Financial LLC and Robinhood Securities, LLC is a contract.

40. This contract was drafted by Defendants and their agents and presented to Plaintiff and Class members — individual consumers — on a take-it-or-leave it basis. There was no negotiation of the terms of the contract.

41. Defendants furnished consideration to Plaintiffs and other Class members in the form of access to Defendants' online trading platform, enabling them to trade securities and options listed on U.S. securities exchanges. In exchange, Defendants received consideration from Plaintiffs and other Class members including but not limited to order flow data, which Defendants sold to market makers to generate revenue, interest generated on cash balances in accounts, interest on margin extensions, and fees.

42. During the outages of March 2, 3, and 9, 2020, Defendants breached their contractual duty to Plaintiffs and other Class members by failing to provide access to their accounts, equites, and money, though Defendants nonetheless received consideration from Plaintiffs and other Class members in the form of order flow data, interest, account fees, and fees.

43. Defendants' breach deprived Plaintiffs and other Class members of the ability to manage their investments during the outages alleged above, which occurred a period of extremely high market volatility.

44. As a proximate result of Defendants' breach, Plaintiffs and other Class members have been damaged, and did not receive the full benefit of their bargain.

45. Accordingly, Plaintiffs and other Class members are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT II

### Breach of the Implied Covenant of Good Faith and Fair Dealing

46. Plaintiffs incorporate the substantive allegations above as if fully set forth here.

47. As alleged above, Plaintiffs and other Class members entered into binding and enforceable contracts with Defendants.

48. Plaintiffs and other Class members entered into this contract with the expectation that Defendants would not do anything to injure the right of Plaintiff and Class Members to receive their benefits from the contract, including their ability to access securities markets.

49. Defendants violated the covenant of good faith and fair dealing implied in its contracts with Plaintiffs and other Class members, including by:

   a. Failing to disclose that their platform was not adequately built or maintained to provide the promised financial services;
   b. Failing to provide financial services during the outages because they lacked infrastructure and systems to ensure that they could perform pursuant to their contracts with Plaintiffs and other Class members;
   c. Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;
   d. Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and
   e. Failing to comply with all applicable legal, regulatory, and licensing requirements.

50. Plaintiffs and other Class members gave consideration that was fair and reasonable, and performed all conditions, covenants, and promises required under their agreements with Defendants.

51. As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff and proposed class members are entitled to damages and/or

restitution in an amount to be proven at trial.

# COUNT III

## Breach of Fiduciary Duty

52. Plaintiffs incorporate the substantive allegations above as if fully set forth here.

53. As licensed providers of financial services, Defendants at all times relevant herein were a fiduciary to Plaintiffs and other Class members and owed them the highest good faith and integrity in performing financial services on their behalf.

54. Defendants breached their fiduciary duties to Plaintiffs and other Class members by:

   a. Failing to disclose that Defendants' financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

   b. Failing to provide financial services during the outages because Defendants lacked infrastructure and systems to ensure that they could perform their obligations under their contracts with Plaintiffs and other Class members;

   c. Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

   d. Failing to execute trades and other requested customer actions promptly and fully (as required by FINRA Rule 5310); and

   e. Failing to comply with all applicable legal, regulatory, and licensing requirements.

55. Defendants' conduct caused Plaintiffs and other Class members harm, losses, and damages, and continues to expose them to harm because Defendants continue to breach their fiduciary duties.

56. Defendants' conduct damaged Plaintiffs and other Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT IV

### Negligence

57. Plaintiffs incorporate the substantive allegations above as if fully set forth here.

58. Defendants were obligated to exercise a reasonable degree of care, skill, and ability that is ordinarily employed by registered securities broker-dealers when developing and providing trading services to Plaintiffs and other Class members, to ensure that Defendants' trading platform was designed to handle foreseeable market fluctuations that could affect system stability, and to provide alternate access to Plaintiff and other Class members in the event of a failure.

59. Through the design, testing, implementation, maintenance, and updating of Defendants' trading platform, a reasonable degree of care would have ensured that Defendants' system would not crash on the dates the outages occurred.

60. A reasonably prudent broker-dealer would have provided an alternate method for its clients to manage their accounts in the event of a website and/or application failure that prevented direct trading.

61. Defendants breached their duty to exercise reasonable care by failing to provide Plaintiffs and other Class members with a trading platform that could remain operational under high volume, including on the outage dates. Defendants further breached their duty to exercise reasonable care by failing to provide Plaintiffs and other Class members with any alternate means of accessing and managing their accounts when the system failed.

62. As a direct, reasonably foreseeable, and proximate result of Defendants' failure to exercise reasonable care, Plaintiffs and other Class members suffered damages that they could not have prevented through the exercise of reasonable diligence.

63. Plaintiffs and other Class members seek monetary damages for these harms and other recovery as allowed by law.

## COUNT V

### Gross Negligence

64. Plaintiffs incorporate the substantive allegations above as if fully set forth here.

65. Defendants owed a duty to Plaintiffs and other Class members to exercise reasonable care in developing and operating Defendants' trading platform, so as to ensure that the service could handle reasonably foreseeable levels of trading volume without crashing.

66. Defendants breached this duty by failing to develop a service capable of functioning during increased volume that was entirely foreseeable.

67. Defendants further breached this duty by failing to implement a back-up system to ensure account and market access for clients in the event of a system failure, even though such potential failure was foreseeable.

68. The foreseeability of the causes of Defendants' system failure, during the type of market activity that virtually ensures that investor losses due to such outages will be amplified, evidences a conscious disregard for the rights of Plaintiffs and other Class members.

69. Defendants' breach of their duty to provide a suitably stable trading platform and backup contingency to its clients directly produced losses for Plaintiffs and other Class members.  But for Defendants' breach, Plaintiffs and other Class members would not have been damaged.

70. Because of Defendants' gross negligence, Plaintiffs and other Class members have been damaged in a similar manner.

71. Plaintiffs and other Class members seek monetary damages for these harms, including punitive damages, and other recovery as allowed by law.

## COUNT VI

## Violation of California's Consumers Legal Remedies Act,

## Cal. Civ. Code §§ 1750, *et seq.*

72. Plaintiffs incorporate the substantive allegations above as if fully set forth here.

73. Plaintiffs and all Class Members are "consumers" as defined by Cal. Civ. Code § 1761.

74. Defendants are "persons" which, by advertising, soliciting, offering, and providing a service to Plaintiff and Class Members, engaged in "transactions" intended to result in the sale of "services" to any consumer, as those terms are defined by Cal. Civ. Code § 1761.

75. Defendants' acts and practices in connection with their deficient financial services violate § 1770 of the Consumers Legal Remedies Act in at least the following ways:

   a. Defendants represents that their services have characteristics, uses, or benefits that they do not have;
   b. Defendants advertise their services with intent not to sell them as advertised;
   c. Defendants represent that their services are of a particular standard, quality, or grade that those services do not in fact meet;
   d. Defendants advertised their services with intent not to supply reasonably expectable demand; and
   e. Defendants represent that their services have been supplied in accordance with a previous representation which they do not in fact meet.

76. Defendants failed to disclose that the services offered were inadequate to handle foreseeable demand on their trading platform. At the time of the transactions, Defendants were aware of the capabilities of their own system and were aware, or through the exercise of due diligence should have been aware, that trading volume could, and likely would, exceed what their platform was capable of handling, causing damage to

their clients.

77. Defendants' advertising of their services stated they granted access to markets, but at lower prices than other online trading services. This advertising led consumers to believe that Defendants offered a service comparable to other providers in the industry, when in fact Defendants' service was deficient in its capacity and had no contingency plan, either electronic or by personal customer service, in the event of a system failure like the outages that occurred.

78. As a result of Defendants' violations of the CLRA, Plaintiffs and other Class members, who would not have used Defendants' services had the limitations and risks been disclosed, have been damaged by losing funds held in their Robinhood accounts, and profits they otherwise would have made, in an amount subject to proof at trial.

79. In accordance with Cal. Civ. Code § 1782(a), contemporaneously with this filing Plaintiffs are sending a notice letter to Defendants to provide them with the opportunity to correct their business practices. Should Defendants decline to do so, Plaintiffs will amend this complaint to add a demand for damages.

80. In accordance with Cal. Civ. Code § 1780, Plaintiffs seek an order enjoining Defendants from the unlawful practices described above, a declaration that Defendants' conduct violates the Consumers Legal Remedies Act, and reasonable attorneys' fees and costs of litigation.

81. In accordance with Cal. Civ. Code § 1780(d), filed concurrently herewith is the Declaration of Tina Wolfson showing that this action has been commenced in the proper forum.

## COUNT VII

**Violation of California Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq*.**

82. Plaintiffs incorporate the substantive allegations above as if fully set forth here.

83. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, prohibits any "unlawful, unfair, or fraudulent business acts or

practices."

84. Defendants' business acts and practices, as alleged above, are unlawful in that they violate the Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.* and FINRA Rule 5310 (which requires execution of orders fully and promptly).

85. Defendants' violated § 17200 by knowingly advertising, soliciting, offering, and providing Robinhood services which were inadequately designed to handle reasonably foreseeable market activity and had no redundancy or backup procedures, and omitting mention this to consumers. Further, Defendants failed to warn Plaintiff and other consumers of the risks attendant to a failure of their systems.

86. Defendants' conduct was unscrupulous, offended established public policy, and was fraudulent.

87. The harm caused by Defendants' conduct greatly outweighs any benefit to consumers.

88. Plaintiffs and other Class members relied on the misrepresentations and omissions of Defendants with respect to the reliability and lack of greater risk associated with the use of Robinhood services. Plaintiffs and other Class members would not have used Defendants' services, and/or would not have paid as much for them, but for Defendants' misrepresentations and omissions. As a result of the conduct alleged herein, Plaintiffs and other Class members suffered injuries in fact and lost money.

89. Plaintiffs and other Class members are entitled to restitution, injunctive relief, and reasonable attorney's fees and costs.

## COUNT VIII

### Unjust Enrichment

90. Plaintiffs incorporate the substantive allegations above as if fully set forth here.

91. Defendants obtained financial benefit from Plaintiffs and other Class members.

92. Plaintiffs and other Class members conferred benefit on Defendants in the

form of valuable order flow data, income on idle account balances, account fees, interest on margin extensions, and debit card interest and fees.

93. Defendants were aware or should have been aware of the limitations of their trading platforms and computer systems but failed to adequately warn prospective clients of these shortcomings.

94. Defendants were aware or should have been aware that such limitations were material considerations that prospective clients would want to consider before using Defendants' services.

95. It would be inequitable to permit Defendants to retain revenue generated from their contractual relationship with Plaintiffs and other Class members, in spite of their failure to perform their contractual duties and their failure to warn Plaintiffs and other Class members of the dangerous deficiencies of Defendants' services.

96. Plaintiffs and other Class members are entitled to restitution or disgorgement of, or the imposition of a constructive trust upon, all profits, benefits and other compensation obtained by Defendants through their deceptive, misleading, and improper conduct.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all Class members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

A. For an Order certifying this action as a class action and appointing Plaintiffs and their counsel to represent the Class;

B. For an award to Plaintiffs and other Class members of their actual damages, punitive damages, and any other form of monetary relief allowed by law;

C. For an award to Plaintiffs and other Class members of restitution, disgorgement, or other equitable relief as the Court deems proper;

D. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein and requiring Defendants to implement reasonable systems

and redundancies;

    E.    For an award to Plaintiffs and other Class members of pre-judgment and post-judgment interest as allowed under the law;

    F.    For an award to Plaintiffs and other Class members of their reasonable attorney's fees and costs of suit, including expert witness fees;

    G.    For an award to Plaintiffs and other Class members of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all claims so triable.

Dated: May 11, 2020                          Respectfully submitted,

                                                  **AHDOOT & WOLFSON, PC**

                                                  Tina Wolfson
                                                  Theodore W. Maya
                                                  **AHDOOT & WOLFSON, PC**
                                                  10728 Lindbrook Dr.
                                                  Los Angeles, California 90024
                                                  Telephone: 310-474-9111
                                                  Facsimile: 310-474-8585

                                                  *Counsel for Plaintiffs*

## DECLARATION OF TINA WOLFSON

I, Tina Wolfson, declare as follows:

1. I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiffs in the above-captioned action. I am admitted to practice law in California and before this Court and am a member in good standing of the State Bar of California. This declaration is made pursuant to California Civil Code section 1780(d). I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside here, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District.

3. Plaintiff Jared Freedland is an individual and a resident of Tampa, Florida.

4. Plaintiff David Kostenko is an individual and a resident of Tacoma, Washington.

5. Plaintiff Romeo Toro is an individual and a resident of Hampton, Virginia.

6. Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets is the corporate parent of Defendants Robinhood Financial LLC and Robinhood Securities, LLC.

7. Defendant Robinhood Financial LLC is a Delaware LLC with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is registered with the U.S. Securities & Exchange Commission ("SEC") as a brokerage firm (SEC#: 8-69188). Defendant Robinhood Financial has a clearing arrangement with its affiliate, Defendant Robinhood Securities.

8. Defendant Robinhood Securities, LLC is a Delaware LLC with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a registered with the SEC as a brokerage firm (SEC#: 8-69916). Defendant Robinhood Securities clears trades introduced by its affiliate, Defendant Robinhood Financial.

I declare under penalty of perjury under the laws of the United States and the State of California this 11th day of May, 2020 in Los Angeles, California that the foregoing is true and correct.

_____
Tina Wolfson